McCarthy, J.
Appeals from two judgments of the Supreme Court (Zwack, J.), entered November 17, 2011 in Albany County, which dismissed petitioners’ applications, in two proceedings pursuant to CPLR article 78, to review two determinations of respondent Governor’s Office of Employee Relations denying petitioner Kevin Ashby’s out-of-title work grievances.
Petitioner Kevin Ashby (hereinafter petitioner) was employed as a correction sergeant, salary grade 17, by respondent Department of Corrections and Community Supervision (hereinafter DOCCS). At all relevant times, petitioner worked at Butler Alcohol and Substance Abuse Correctional Treatment Center (hereinafter Butler) in the Town of Butler, Wayne County and was a member of a unit whose certified collective bargaining representative is petitioner New York State Correctional Offi *1193 cers and Police Benevolent Association, Inc. (hereinafter NYSCOPBA). Petitioner filed two out-of-title work grievances alleging that on eight occasions in April 2010 and seven occasions in June 2010 he was assigned as shift supervisor for Butler, thereby requiring him to perform the work of a correction lieutenant, salary grade 20, and he sought to be compensated accordingly.
Petitioner’s grievances proceeded through a three-step administrative review process as outlined in the collective bargaining agreement (hereinafter CBA). They were denied at the facility level and the agency level. Upon appeal to respondent Governor’s Office of Employee Relations (hereinafter GOER), GOER, in conformance with the recommendation of respondent Division of Classification and Compensation of the Department of Civil Service (hereinafter DCC), denied petitioner’s grievances. Petitioners then commenced these two proceedings seeking to annul GOER’s determinations, alleging that the determinations were arbitrary, capricious and violative of both Civil Service Law § 61 (2) and the CBA. Supreme Court dismissed both petitions, prompting petitioners to appeal.
Supreme Court correctly concluded that GOER’s determinations are not wholly arbitrary or without a rational basis. This Court’s review is limited to whether each record as a whole provides a rational basis for GOER’s determinations denying petitioner’s out-of-title work grievances, and such determinations should not be disturbed unless they are “ ‘wholly arbitrary or without any rational basis’ ” (Matter of Curtiss v Angello, 269 AD2d 675, 675 [2000], quoting Matter of Scala v Gambino, 204 AD2d 933, 934 [1994]; accord Matter of Haubert v Governor’s Off. of Empl. Relations, 284 AD2d 879, 880 [2001]; Matter of Woodward v Governor’s Off. of Empl. Relations, 279 AD2d 725, 726-727 [2001]; Matter of Civil Serv. Empls. Assn., Local 1000, AFSCME v Angello, 277 AD2d 576, 578 [2000]). “An out-of-title work assignment exists when an employee has been assigned or compelled to perform the duties of a higher grade, without a concomitant increase in pay, frequently, recurrently and for long periods of time” (Matter of Caruso v Mayor of Vil. of S. Glens Falls, 278 AD2d 608, 609 [2000] [citation omitted]; accord Matter of City of Saratoga Springs v City of Saratoga Springs Civ. Serv. Commn., 90 AD3d 1398, 1400 [2011]; Matter of Sprague v Governor’s Off. of Empl. Relations, 13 AD3d 849, 850 [2004]; Matter of Gajewski v Angello, 301 AD2d 721, 721-722 [2003]).
While Civil Service Law § 61 (2) seemingly provides an “un *1194 qualified prohibition against nonemergency out-of-title work,[1] case law has made the standard somewhat more flexible based on practicality” (Matter of Sprague v Governor’s Off. of Empl. Relations, 13 AD3d at 850; see Matter of City of Saratoga Springs v Saratoga Springs Civ. Serv. Commn., 90 AD3d at 1400; Matter of Cushing v Governor’s Off. of Empl. Relations, 58 AD3d 1095, 1096 [2009]). “Not all additional duties constitute out-of-title work but, instead, the question is whether the new duties are appropriate to petitioner's] title[ ] and/or are similar in nature to, or a reasonable outgrowth of, the duties listed in petitioner's] job specifications” (Matter of Haubert v Governor’s Off. of Empl. Relations, 284 AD2d at 880 [citation omitted]; accord Matter of City of Saratoga Springs v City of Saratoga Springs Civ. Serv. Commn., 90 AD3d at 1400; Matter of Brynien v Governor’s Off. of Empl. Relations, 79 AD3d 1435, 1436 [2010]; see Matter of Cushing v Governor’s Off. of Empl. Relations, 58 AD3d at 1096). “ ‘[A]n employee’s performance of overlapping functions of an absent supervisor has not been found to establish a violation of Civil Service Law § 61 (2) where such functions were substantially similar to those detailed in his or her job description’ ” (Matter of City of Saratoga Springs v City of Saratoga Springs Civ. Serv. Commn., 90 AD3d at 1400, quoting Matter of Cushing v Governor’s Off. of Empl. Relations, 58 AD3d at 1096; compare Matter of Woodward v Governor’s Off. of Empl. Relations, 279 AD2d at 726-727).
The classification standard for the position of correction sergeant provides that such employees “function primarily in the capacity of an area supervisor or Assistant Watch Commander (assistant to the shift supervisor),” working under the supervision of a correction lieutenant. As an area supervisor, a correction sergeant, among other things, supervises a group of correction officers in an assigned area. The classification standard for a correction lieutenant provides that someone with that title can function as, among other things, a watch commander or shift supervisor, whereby he or she supervises all sergeants and officers on a given shift. Thus, a shift supervisor is “responsible for a large number of uniformed security personnel.” One of the main distinctions between a correction sergeant and a correction lieutenant is the level of supervision exercised by each position, with a correction lieutenant having the authority to supervise correction sergeants.
Both classification standards recognize that “[s]ome facilities, such as Correction Camps, Shock Incarceration Facilities, and *1195 Work Release Facilities, have different organizations and program emphasis, and the staffing pattern may, in turn, reflect the unique nature of these facilities.” Although Butler does not fall within one of the listed categories of specialized facilities, the list is illustrative rather than all-inclusive. At the time that petitioner’s grievances were filed, Butler was unique in that it was the only correctional facility in the state that had “both a medium [security] Alcohol and Substance Abuse Treatment Center and a minimum [security] component at the same facility.” Butler is a relatively small facility that, as of June 2011, confined only 187 inmates and was staffed by 76 correction officers and four correction sergeants, as well as superior officers. According to Butler’s acting superintendents, correction sergeants acted as shift supervisors at that facility.
NYSCOPBA’s staffing/grievance specialist averred that DOCCS has a long-standing practice of assigning correction sergeants to serve as shift supervisors in minimum security facilities; however, he went on to note that this practice does not extend to medium security facilities such as Butler. His affidavit does not address the significance of the fact that, at the time of the grievances, Butler housed both minimum and medium security components in that facility. Additionally, the long-standing practice referred to in his affidavit has been upheld as not constituting out-of-title work for correction sergeants (see Matter of Security & Law Enforcement, Council 82, AFSCME v Coughlin, Sup Ct, Albany County, July 24, 1992, Williams, J., index No. 2767/92).
During the administrative review processes, the only evidence that was presented concerning the duties that petitioner actually performed on the relevant dates was submitted by DOCCS. Aside from the information contained in the grievance forms, neither petitioner nor NYSCOPBA submitted any information regarding the facts surrounding the grievances or specific duties that petitioner performed. Significantly, article 9 of the CBA provided NYSCOPBA the right, during the administrative appeal to GOER, to submit to DCC a “written brief of the facts surrounding the grievance,” but NYSCOPBA never did so. Butler’s acting superintendents stated that petitioner’s bid job was “vacation relief,” which meant that petitioner worked “various shifts covering for other [sergeants’] days off.” The acting superintendents reported that the duties performed by petitioner during the relevant dates consisted of maintaining log books, preparing various reports, holding pre-shift briefings, assigning and coordinating staff for security, making facility rounds, monitoring meals in the mess hall and other inmate *1196 movements, conducting investigations and performing tier I hearings, covering drafts in and out, and supervising fire drills.[2]
Petitioner, while assigned as shift supervisor, did perform some duties that are listed in the classification standard of a correction lieutenant. For example, a correction lieutenant shift supervisor “[pjrepares reports,” “[ajssigns [sergeants and correction officers] to posts,” “[tjours the facility,” conducts investigations and listens to verbal testimony regarding inmate disciplinary cases. Significantly, however, there are many duties that a correction lieutenant performs pursuant to the classification standard that petitioner never performed. Most notably, the records that were submitted to DCC and GOER do not contain any evidence that petitioner ever supervised any correction sergeants.
While there is some overlap between the duties that petitioner performed and the duties of a correction lieutenant, most of the duties that he performed fall within or are a reasonable outgrowth of the duties of his current position. Specifically, the classification standard states that a correction sergeant “[mjaintains work assignment records and other reports,” prepares written reports on behavioral incidents, “[ijnstructs [ojfficers under their supervision in the proper performance of their duties and keeps them informed of any changes in policy and procedure,” “[ajssigns officers to their posts,” “[cjonducts roll calls,” “[ajssigns overtime to [ojfficers,” “[pjrepares and maintains work charts and vacation schedules,” “[pjrepares staffing requirements for next shift and day,” “[ajuthorizes time off for [ojfficers,” “[tjours assigned areas of facility,” “[ojbserves major movements and large congregations of inmates, such as might exist in mess halls,” “[investigates and reports on all behavioral incidents” and “[cjonducts first level disciplinary hearings on all inmates in assigned area of supervision.”
Given the similarities between the duties actually performed by petitioner as a shift supervisor and those enumerated in the correction sergeant classification standard, as well as the unique nature of Butler at the time the grievances were filed, the infrequent nature of such assignments and the absence of evidence establishing that petitioner performed a distinctive aspect of the correction lieutenant job title (namely, supervision of correction sergeants), GOER’s determinations are supported by a *1197 rational basis in the records (see Matter of Brynien v Governor’s Off of Empl. Relations, 79 AD3d 1435, 1437-1438 [2010], supra; Matter of Cushing v Governor’s Off. of Empl. Relations, 58 AD3d 1095, 1096-1097 [2009], supra; Matter of Gajewski v Angello, 301 AD2d 721, 722 [2003], supra; Matter of Gorelick v Governor’s Off. of Empl. Relations, 227 AD2d 858, 859 [1996]; compare Matter of Sprague v Governor’s Off. of Empl. Relations, 13 AD3d 849, 850-851 [2004], supra; Matter of Kuppinger v Governor’s Off. of Empl. Relations, 203 AD2d 664, 664-665 [1994]). Although petitioner was assigned increased supervisory duties, as he was in charge of all correction officers in the facility for the shift rather than just those in one area, based on the relatively small size of Butler, this increase in supervisory responsibilities was a logical extension of his duties as correction sergeant and, therefore, did not constitute out-of-title work (see Matter of Gajewski v Angello, 301 AD2d at 722; Matter of Haubert v Governor’s Off. of Empl. Relations, 284 AD2d 879, 880 [2001], supra; compare Matter of Sprague v Governor’s Off. of Empl. Relations, 13 AD3d at 851; Matter of Woodward v Governor’s Off. of Empl. Relations, 279 AD2d 725, 727 [2001], supra; Matter of Steen v Governor’s Off. ofEmpl. Relations, 271 AD2d 738, 739-740 [2000]; Matter of Kuppinger v Governor’s Off of Empl. Relations, 203 AD2d at 665).[3]
Mercure, J.E, Spain and Garry, JJ., concur.
Ordered that the judgments are affirmed, without costs.

. This prohibition against out-of-title work was also embodied in article 9 of the CBA.

. Contrary to petitioners’ contention, Matter of Caruso v Mayor of Vil. of S. Glens Falls (278 AD2d 608 [2000], supra) does not require a different conclusion. In Caruso, the job description for a police officer did not provide for any supervisory responsibilities and, thus, this Court held that requiring a police officer to fill in for a sergeant or chief of police constituted out-of-title work (id. at 609). Conversely, as the job specification for correction sergeant includes supervisory responsibilities, petitioner’s increased supervisory duties here can be construed as a logical outgrowth of the regular duties of his position (see Matter of Gajewski v Angello, 301 AD2d at 722; Matter of Haubert v Governor’s Off. of Empl. Relations, 284 AD2d at 880; Matter of Wojtylak v Governor’s Off. of Empl. Relations, 161 AD2d 1097, 1098-1099 [1990]).

. The duties that the acting superintendents stated that petitioner performed total only 60% of his time. DCC’s director averred that, because the total was only 60%, “presumably, petitioner’s other duties [were] unrelated to responsibilities as shift supervisor.”